UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ROBERT LYNN, and <br> ROBERT LYNN COMPANY, INC., <br> <br> Appellants, <br> <br> v. <br> <br> KATHRYN L. PRY, Chapter 7 Trustee for the <br> Bankruptcy Estate of Daniel R. Lynn, <br> <br> Appellee. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 4:15-cv-00029-TWP-TAB <br> ) <br> ) <br> ) <br> ) <br> ) |

**ENTRY ON BANKRUPTCY APPEAL**

This matter is before the Court on an appeal of a Bankruptcy Court adversary ruling, filed pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8002, by Appellant[1] Robert Lynn Company, Inc. ("Robert Lynn Co."). Also before the Court is a Motion to Dismiss Appeal and for Sanctions (Filing No. 35) filed by Appellee, Kathryn L. Pry, Chapter 7 Trustee for the Bankruptcy Estate of Daniel R. Lynn. ("The Trustee"). For the reasons stated below, the Court affirms the ruling of the Bankruptcy Court and denies Robert Lynn Co.'s appeal. The Court also denies as moot the Trustee's Motion to Dismiss and for sanctions.

**I. BACKGROUND**

On July 30, 2012 Daniel Lynn filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. Kathryn L. Pry was duly appointed and qualified to serve as the Chapter 7 trustee in Daniel Pry's bankruptcy case. Daniel Lynn was the sole owner and operator

---

[1] While the Bankruptcy Court entered judgment against Robert Lynn Co., the Bankruptcy Court did not enter judgment against Robert Lynn individually. (*See* Filing No. 33-4 at 7.) As a result, Robert Lynn does not have standing to appeal the Bankruptcy Court's judgment. Accordingly, for purposes of this appeal, the Court will refer to Robert Lynn Co. as the sole Appellant.

of Daniel Investments Inc. ("Daniel Investments"), a company which he created for the purpose of holding his ownership interest in Advantage Plus Real Estate Services.

The Appellant Robert Lynn is Daniel Lynn's father. Robert Lynn is the President and fifty percent shareholder of Robert Lynn Co., with authority to make unilateral decisions for and on behalf of Robert Lynn Co. Prior to August 9, 2011, Robert Lynn Co. was the sole owner of two parcels of land, totaling over 60 acres ("the Property"). On August 9, 2011, Robert Lynn, as President of Robert Lynn Co., executed a Warranty Deed, which provided for the transfer of the Property from Robert Lynn Co. to his son's company, Daniel Investments ("the First Deed"). Robert Lynn's attorney, Alan Applegate, prepared the First Deed at the direction of Robert Lynn. There was no consideration paid or received for the First Deed. That same day, the First Deed was recorded in the Office of the Recorder of Floyd County, Indiana ("the Recorder's Office"). ([Filing No. 37 at 24](#).)

Meanwhile, also on August 9, 2011, Robert Lynn prepared another Warranty Dead ("the Second Deed"), this time without the help of his attorney. The Second Deed provided for the transfer of the Property back to Robert Lynn Co. from Daniel Investments. As with the First Deed, there was no consideration paid or received for the Second Deed. Robert Lynn instructed his son, Daniel Lynn to sign the Second Deed, which he did. However, Daniel Lynn had no idea what he was signing when he signed the Second Deed. Daniel Lynn testified that he often signed legal documents at his father's behest, without questioning or looking at what he was signing. *Id*. at 65-67. Further, whenever he signed anything for his father, Daniel Lynn intended to accomplish whatever it was that his father wanted the signature to accomplish. *Id*. at 66-67. The Second Deed was not recorded until almost seventeen months later, following Daniel Lynn's bankruptcy filing.

On August 11, 2011, Robert Lynn, as President of Robert Lynn Co., executed a Promissory Note, in which Robert Lynn Co. promised to pay La-Le Two, LLC the sum of $200,000.00. That same day, Daniel Lynn, as President of Daniel Investments, executed a Mortgage, by which Daniel Investments granted a mortgage lien on the Property to La-Le Two, in order to secure the obligations of Robert Lynn Co. under the Promissory Note. Robert Lynn's attorney, Alan Applegate, prepared the Mortgage at the direction of Robert Lynn. On August 12, 2011, the Mortgage was recorded in the Recorder's Office.

Robert Lynn testified that the purpose of the First Deed was to temporarily transfer the Property to Daniel Investments. *Id*. at 73-74, 80-81. It was not his intent for the First Deed to transfer ownership, however Robert Lynn later explained that he did intend the First Deed to pass title of the Property to Daniel Investments long enough to get the loan transaction with La-Le Two completed. *Id*. at 73-74, 80-81, 140, 144. In this regard, Robert Lynn explained that he was under "constant pressure" from lenders who were "looking at everything owned by Robert Lynn Co." and were insisting that Robert Lynn Co. put up "anything [it] had" for additional collateral. *Id*. at 72-74, 76, 140, 150-51. As a result, Robert Lynn transferred the Property to Daniel Investments so that lenders would not find the Property in Robert Lynn Co.'s name in the public record and try to attach the Property as collateral. *Id*. at 78-80, 87-88, 150-51. Nevertheless, although Robert Lynn used the transfer to prevent the Property from being discovered as an asset of Robert Lynn Co. in the public record, he insists that he kept the Property listed in his private records at all times and he never considered the Property to be actually transferred. *Id*. at 89-90, 97, 150-51.

Robert Lynn asserts that the purpose of the Second Deed was to get the transaction with La-Le Two completed without "an equity question that [the Property] could be attached by anybody". *Id*. at 86. Robert Lynn intended to record the Second Deed shortly after the loan

transaction with La-Le Two was completed. *Id*. at 92:14-18, 100. However, he did not have a plan regarding when he would record the Second Deed because he was uncertain about the pressures from creditors and he needed time to analyze what progress he could make with them. *Id*. at 101-103. Robert Lynn delayed recording the Second Deed until he felt he had satisfied all of his creditors, hoping to prevent lenders from discovering the Property and attaching it by way of a judgment lien. *Id*. at 104, 147-149, 159. Indeed, Robert Lynn testified, "I wasn't in any urgency to do it until . . . you-all tried to claim that, for some reason, it could or should be included in the bankruptcy." *Id*. at 149.

As stated earlier, Daniel Lynn filed, a voluntary Chapter 7 bankruptcy petition on July 30, 2012. ([Filing No. 33-4 at 2](#).) On or about December 19, 2012, The Trustee's counsel informed Daniel Lynn's counsel that the Bankruptcy Estate was pursuing the liquidation of Daniel Investments, including the Property, and warned that Daniel Lynn, Robert Lynn, and Robert Lynn Co. should take no action to cause the transfer of the Property. *Id*. at 3. Nevertheless, on January 8, 2013, Robert Lynn recorded the Second Deed in the Recorder's Office. *Id*.

On November 4, 2013, The Trustee filed an adversary proceeding, seeking to avoid the post-petition transfer of the Property under Sections 549 and 550 of the Bankruptcy Code. *Id*. at 1-2; ([Filing No. 36 at 7](#).) Thereafter, the Bankruptcy Court held a trial regarding The Trustee's adversary proceeding. ([Filing No. 33-4 at 1](#).) On February 27, 2015, the Bankruptcy Court entered judgment in favor of Robert Lynn individually but against Robert Lynn Co. *Id*. at 6-7. As a result, the Bankruptcy Court avoided the post-petition transfer of the Property and entitled The Trustee to its recovery. *Id*.

Robert Lynn Co. filed a Notice of Appeal, appealing the Bankruptcy Court's judgment on March 10, 2015. Following the correction of a number of procedural errors, on March 27, 2015,

Robert Lynn Co. filed an Amended Notice of Appeal. (Filing No. 3.) Robert Lynn Co. argues that the Bankruptcy Court erred in determining that Daniel Investments owned the Property at the time that Daniel Lynn filed for bankruptcy and that Robert Lynn never actually intended to transfer the Property to Daniel Investments.

Also, on December 7, 2015, The Trustee filed a Motion to Dismiss the appeal, alleging numerous procedural and formatting errors in Robert Lynn Co.'s appellate brief. (Filing No. 35.)

## II. LEGAL STANDARD

This Court has jurisdiction of this appeal under 28 U.S.C. § 158(a)(1), which grants the district court jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. "When a party appeals a bankruptcy court's decision under 28 U.S.C. § 158(a), district courts review a bankruptcy court's factual findings for clear error, and legal conclusions and the legal significance accorded to facts *de novo*." *In re Brown*, 444 B.R. 173, 175 (S.D. Ind. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). The clearly erroneous standard is a highly deferential one. *Peoples State Bank v. Port Royal Aggregates, Inc.*, 193 B.R. 1020, 1022 (Bankr. S.D. Ind. 1996). "Under this standard, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as trier of fact." *Id*. Indeed, a factual finding is only clearly erroneous when the district court is "left with the definite and firm conviction that a mistake has been committed." *Matter of Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995); *In re Brown*, 444 B.R. at 175. In contrast, *de novo* review requires an independent examination of the applicable law without deference to the bankruptcy court's conclusions. *In re Brown*, 444 B.R. at 175, filed pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8002.

### III. DISCUSSION

"The [bankruptcy] trustee may avoid a transfer of property of the estate that occurs after the commencement of the case; and . . . that is not authorized under [the bankruptcy code] or by the [Bankruptcy Court]." 11 U.S.C. § 549. Further, to the extent that a transfer is avoided pursuant to 11 U.S.C. § 549, "the [bankruptcy] trustee may recover, for the benefit of the estate, the property transferred . . . from the initial transferee of such transfer". 11 U.S.C. § 550.

To begin, it is difficult to determine whether Robert Lynn Co. argues that the Property never transferred to Daniel Investments or that the Property was effectively transferred back to Robert Lynn Co. prior to Daniel Lynn filing for bankruptcy. In either event, however, the parties appear to agree that the controlling issue is the intent of the grantor. In this regard, the Court concludes that the Bankruptcy Court's factual conclusions were more than plausibly supported by the record evidence and the Bankruptcy Court's legal conclusions were not clearly erroneous.

In Indiana, a deed only effectively passes title to real estate if the grantor intends to give a present effect to the deed. *McColley v. Binkley*, 121 N.E. 847, 849 (Ind. App. 1919).

> [A] deed, though duly signed, sealed, and acknowledged, is not effectual to convey title until it has been either actually or constructively delivered. . . . The intention of the grantor is the controlling element, and it may be manifested by words, acts, or conduct. To constitute a delivery of a deed, so as to pass the title, it is necessary that the grantor should intend to give present effect to the instrument.

*Id*.

The Bankruptcy Court concluded that Robert Lynn Co. intended to transfer title to Daniel Investments at the time the First Deed was executed, citing Robert Lynn's testimony that his intention was to put the Property out of the reach of his creditors by conveying title to Daniel Investments. This factual finding is more than plausibly supported by the record, given the extensive testimony by Robert Lynn to this effect. (*See* Filing No. 37 at 72-74, 76, 78-81, 87-88,

140, 144, 150-51.) Further, the Bankruptcy Court concluded that Daniel Lynn's only intention at the time of signing the Second Deed, ostensibly conveying the Property back to Robert Lynn Co., was to fulfill his father's intentions. This, too, is supported by the testimony of Daniel Lynn, who stated that he did not read the Second Deed but instead trusted his father implicitly whenever his father told him to sign a document. *Id*. at 65-67.

Additionally, the Bankruptcy Court concluded that Robert Lynn did not intend to give effect to the Second Deed until an undetermined future date. In support, the Bankruptcy Court cited the fact that, as of August 11, 2011, two days after the purported dual transfers, Robert Lynn Co. completed the $200,000.00 Promissory Note with La-Le Two and Daniel Lynn signed a Mortgage to secure the Promissory Note. Further, the Bankruptcy Court noted that Robert Lynn Co. took no additional action regarding the Second Deed until recording it. The Court finds these factual conclusions, which do not appear to be contested, to also be more than plausibly supported by the record.

Indeed, the Bankruptcy Court could have gone even further and cited the fact that Daniel Lynn also recorded the First Deed on the date it was signed. *Id*. at. 24. In addition, Robert Lynn gave testimony that, although he originally intended to record the Second Deed after the Promissory Note was completed, he ended up keeping the Property off the public records until he felt he had satisfied all of his creditors, hoping to prevent lenders from discovering the Property and attaching it by way of a judgment lien. *Id*. at 101-104, 147-149, 159. Further, Robert Lynn did not record the Second Deed until seventeen months after it was signed and less than a month after Daniel Lynn was told by The Trustee that the Bankruptcy Estate intended to liquidate the Property as an asset of Daniel Investments. (Filing No. 33-4 at 3.) Robert Lynn's testimony is particularly telling in this regard, asserting that he "wasn't in any urgency to [record the Second

7

Deed] until . . . you-all tried to claim that, for some reason, it could or should be included in the bankruptcy." *Id*. at 149.

On appeal, Robert Lynn Co. argues that, although Robert Lynn testified that he intentionally did not record the Second Deed in order to keep if off the public records, Robert Lynn also testified that always kept the Property listed on his private accounts and never considered the Property to actually have been transferred to Daniel Investments. ([Filing No. 37 at 89-90](), 97, 150-51.) While this may be true, the Court is not at liberty to reweigh the evidence, but is instead limited to assessing whether the Bankruptcy Court's factual conclusions are plausibly supported by the record. *Peoples State Bank*, 193 B.R. at 1022. As such, because the Bankruptcy Court's factual conclusions to be more than plausibly supported by substantial evidence in the record, the Court does not consider it clear error that the Bankruptcy Court did not afford the additional testimony cited by Robert Lynn Co. greater weight.

Further, even considering this additional testimony and reviewing the issue of intent, in relation to the Second Deed, *de novo*, the Court reaches the same conclusion as the Bankruptcy Court. In this regard, *Bellin v. Bloom*, 28 N.E.2d 52 (Ind. 1940), appears to be factually similar and controlling. In *Bellin*, a father executed a deed to real estate to his daughter without receiving consideration for the property, and the deed was recorded. *Id*. at 54. Thereafter, the father kept possession of the real estate and the father claimed that he never actually intended to deliver the real estate to his daughter. *Id*. Instead, the father intended to vest legal title with the daughter solely for the purposes of putting it out of the reach of creditors; and asserted that he had a private agreement with the daughter to re-convey the title back to him at a later time. *Id*. at 55. When the daughter moved to quiet title on the real estate, the *Bellin* court held that the real estate rightly belonged to her and not her father. *Id*. In so concluding, the court reasoned that the father intended

to deliver legal title to the real estate to the daughter when the deed was recorded and when the daughter executed a mortgage on the real estate. *Id*. at 55, 57. In addition, the court found that intent to transfer the real estate was further established because the father executed the deed in order to put the property beyond the reach of their creditors. *Id*. The *Bellin* court noted that parol trusts, wherein the grantor conveys property to the grantee to hold for the benefit of the grantor, are not enforceable under Indiana law, particularly when used to defraud creditors. *Id*. at 55-58 (collecting cases).

Applying *Bellin*, the only valid transfer of the Property was the first conveyance, despite the fact that Robert Lynn may have never intended to actually convey the Property to Daniel Investments and despite the fact that Robert Lynn possessed the unrecorded Second Deed. Similar to the facts in *Bellin*, Robert Lynn Co. deeded the Property to Daniel Investments with the stated intention of keeping it out of the public records, thereby preventing creditors from using the Property as collateral. Immediately thereafter, Daniel Lynn recorded the First Deed and executed a Mortgage on the Property to benefit Robert Lynn Co. Applying *Bellin*, these actions sufficiently demonstrate Robert Lynn's intention to transfer title of the Property to Daniel Investments. In addition, *Bellin* dictates that Robert Lynn's private intentions to avoid actually transferring title and/or to privately re-convey the Property back to Robert Lynn Co. are not unenforceable under Indiana law, particularly given the fact that Robert Lynn avoided recording the Second Deed to further prevent his creditors from attaching the Property pursuant to a judgment lien.

As a result, the only transfer that had legal effect was the First Deed, which vested title of the Property in Daniel Investments. Accordingly, because the Second Deed was not recorded until after Daniel Lynn filed for bankruptcy, the Bankruptcy Court was correct in concluding that Daniel Investments owned the Property at the time Daniel Lynn filed for bankruptcy.

In addition, the Court notes that Robert Lynn Co. provided no facts or argument to challenge the Bankruptcy Court's additional conclusion that Daniel Lynn's equitable interest in Daniel Investments, including the Property, passed to the Bankruptcy Estate when Daniel Lynn filed for bankruptcy. Reviewing the applicable law, the Court also considers this conclusion to be correct. *See* 11 U.S.C. § 541(a)(1) (a bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case"). *See also Fowler v. Shadel*, 400 F.3d 1016, 1018-19 (7th Cir. 2005) (holding that the trustee gained possession of the debtor's equitable interest in corporate property, including the debtor's stock shares, when the debtor filed for bankruptcy); *In re Hancock*, 192 F.3d 1083, 1086 (7th Cir. 1999) (holding that the bankruptcy estate gained possession of the legal and equitable interests in the debtor's corporate stock and the debtor's rights to the corporation's assets when the debtor filed for bankruptcy). As a result, the Bankruptcy Court was justified in concluding that Daniel Lynn's equitable interest in Daniel Investments, which included the Property, passed to the Bankruptcy Estate when Daniel Lynn filed for bankruptcy.

Finally, Robert Lynn Co. also argues that equity should prevent the conclusion that Daniel Investments owned the Property. In so arguing, Robert Lynn Co. notes that Daniel Investments never paid for the Property, that Robert Lynn never intended for Daniel Investments to own the Property, and that Daniel Investments was "simply to hold the [Property] for the benefit of Robert Lynn Co." (Filing No. 29 at 10-11). However, as already discussed, the Bankruptcy Court's conclusions that Daniel Investments owned the Property and that Robert Lynn intended as much were both plausibly supported by the record evidence and were properly concluded under the applicable law. Accordingly, Robert Lynn Co.'s equity argument does not succeed for the same reasons as its intent argument.

In sum, Robert Lynn Co. has failed to establish either that the Bankruptcy Court made a clearly erroneous factual error or failed to apply the applicable law correctly. As a result, the Court considers reversal to be unwarranted. Instead, in the absence of such an error, the Court must affirm the Bankruptcy Court's judgment. *See In re Brown*, 444 B.R. at 175; *Ojeda*, 599 F.3d at 716.

### IV. CONCLUSION

For the aforementioned reasons, the Court **AFFIRMS** the ruling of the Bankruptcy Court. (Filing No. 1.) Therefore, the Court **DENIES** the appeal of Robert Lynn Co. The Court will enter final judgment by separate order.

Further, because the appeal is denied on substantive grounds, the Court **DENIES AS MOOT** The Trustee's Motion to Dismiss and for sanctions, which requested dismissal based on procedural and formatting errors under Fed. R. Bankr. P. 8014 and 8015. (Filing No. 35.) Such a resolution promotes the purpose and intent of the bankruptcy rules and ensures a resolution on the merits rather than on procedural errors. *See* Fed. R. Bankr. P. 1001 ("[t]hese rules should be construed to secure the just, speedy, and inexpensive determination of every case and proceeding"); Fed. R. Bankr. P. 8028 ("[i]n the interest of expediting decision or for other cause in a particular case, the district court . . . may suspend the requirements or provisions of the rules", including Rules 8014 and 8015 which govern the formatting of briefs).

**SO ORDERED.**

Date: 2/3/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles R. Murphy
ATTORNEY AT LAW
terrax@win.net

Deborah J. Caruso
DALE & EKE
dcaruso@daleeke.com

Erick P. Knoblock
DALE & EKE PC
eknoblock@daleeke.com

Meredith R. Theisen
DALE & EKE, P.C.
mtheisen@daleeke.com